IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**ROBERT BAKER,**

    Plaintiff,

v.

**GLADSTONE AUTO, LLC,**

    Defendant.

No. 3:18-cv-00155-JR

OPINION AND ORDER

**MOSMAN, J.,**

On April 18, 2019, Magistrate Judge Jolie A. Russo issued her Findings and Recommendation (F&R) [48], recommending that I grant in part and deny in part Defendant Gladstone Auto's Motion for Summary Judgment [34]. Gladstone Auto filed Objections to the F&R [50] and Plaintiff Robert Baker filed a Response [52]. For the reasons stated below, I adopt the F&R in part and grant Gladstone Auto's Motion for Summary Judgment [34] on Claims Five and Six, the retaliation element of Claim Seven, and Claims Eight, Nine, and Ten. I decline to adopt the F&R, however, on the disparate treatment elements of Claims One and Two, Claims Three and Four, and the interference element of Claim Seven. And on those claims I grant summary judgment.

1 – OPINION AND ORDER

## DISCUSSION

The magistrate judge makes only recommendations to the court, to which any party may file written objections. The court is not bound by the recommendations of the magistrate judge but retains responsibility for making the final determination. The court is generally required to make a de novo determination regarding those portions of the report or specified findings or recommendation as to which an objection is made. 28 U.S.C. § 636(b)(1)(C). However, the court is not required to review, de novo or under any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the F&R to which no objections are addressed. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). While the level of scrutiny under which I am required to review the F&R depends on whether or not objections have been filed, in either case, I am free to accept, reject, or modify any part of the F&R. 28 U.S.C. § 636(b)(1)(C).

Judge Russo recommended that I deny Gladstone Auto's Motion for Summary Judgment [34] on Mr. Baker's claims of race-based discrimination and harassment (Claims One and Two), his claims of race-based retaliation (Claims Three and Four), and his claim of interference with rights under the Family and Medical Leave Act (FMLA) (Claim Seven). F&R [48] at 22. Gladstone Auto objected to these recommendations.

A. Constructive Discharge

With respect to the discrimination and harassment claims and the retaliation claims, Gladstone Auto first argued that Judge Russo improperly found that Mr. Baker had been constructively discharged. Objs. [50] at 5–9. Judge Russo found a question of material fact regarding whether Mr. Baker had been constructively discharged as the result of a hostile work environment and the lenient discipline imposed on Mr. Baker's supervisor, Rich Stiefel. F&R [48] at 13–14. Mr. Baker, who is Hispanic, alleged that Mr. Stiefel constantly made derogatory

2 – OPINION AND ORDER

remarks about Hispanic customers and that supervisors at Gladstone Auto were aware of those remarks but failed to take any action. *Id.*

Judge Russo properly stated the standard for constructive discharge: whether an employer "create[d] working conditions that are sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood." F&R [48] at 13 (quoting *Poland v. Chertoff*, 949 F.3d 1174, 1186 (9th Cir. 2007)). Gladstone Auto argued that, even when viewing the facts in the light most favorable to Mr. Baker, there is no evidence of objectively intolerable working conditions. Objs. [50] at 7. While this issue would be dispositive if I agreed with Gladstone Auto's argument, it is possible to determine whether summary judgment is appropriate without addressing whether Mr. Baker was constructively discharged. If there was no constructive discharge, Gladstone Auto is entitled to assert the *Faragher–Ellerth* defense to Mr. Baker's harassment claims. But even if there was no constructive discharge, I find the *Faragher–Ellerth* defense inapplicable on the facts of this case. Similarly, Mr. Baker's retaliation claims fail if there was no constructive discharge. But assuming Mr. Baker was constructively discharged, I find no issue of material fact regarding the claims that the constructive discharge was retaliatory.

### 1. The *Faragher–Ellerth* Affirmative Defense

Constructive discharge is relevant to Gladstone Auto's defense on the harassment claims because the *Faragher–Ellerth* affirmative defense is only available to an employer when "no tangible employment action was taken." F&R [48] at 17 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998)). Assuming that no tangible employment action was taken, however, Gladstone Auto must also show that it "exercised reasonable care to prevent and correct promptly any harassing behavior." *Id.* Mr. Baker has alleged that several of his

supervisors were aware of Mr. Stiefel's remarks but failed to take any action to correct the harassing behavior. *See* Liss Decl. [41] Ex. 1 at 117. Because Mr. Baker has raised a genuine dispute regarding whether supervisory employees of Gladstone Auto were aware of Mr. Stiefel's discriminatory comments in the years prior to Mr. Baker's resignation, summary judgment based on the *Faragher–Ellerth* defense is not appropriate. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 288–89 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968) ("[A]ll that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.").

2. Retaliation

Whether or not Mr. Baker was constructively discharged is also relevant to his claims that the constructive discharge was in retaliation for complaining about Mr. Stiefel's comments to the general manager at Gladstone Auto, David Elder. But even assuming that Mr. Baker was constructively discharged, his retaliation claims (Claims Three and Four) fail for two reasons. First, there is no direct evidence that Mr. Baker was constructively discharged as a result of complaining to Mr. Elder. Nor is there any plausible indirect evidence, such as a worsening of Mr. Baker's working conditions after he complained. The only way to infer a retaliatory motive is the proximity between Mr. Baker's complaint to Mr. Elder and the time when Mr. Baker left his job at Gladstone Auto. *See* F&R [48] at 18. Under these facts, where the conditions of Mr. Baker's employment remained objectively the same before and after the complaint, temporal proximity alone is not sufficient to infer a retaliatory motive.

To understand why the retaliation claims are implausible, it is important to note the novelty of Mr. Baker's retaliation claim. In a normal case on facts like those presented in this

case, an employee alleges retaliation after his employer takes some action to punish the complaining employee. Mr. Baker never alleges that he was punished for complaining. And Mr. Baker was on leave from the time he complained to Mr. Elder until his departure from Gladstone Auto, so his working conditions did not change as a result of his complaint. F&R [48] at 8. Rather than alleging that Gladstone Auto took any action to punish him, Mr. Baker argues that Gladstone Auto retaliated by inadequately punishing Mr. Stiefel. Without more, and in the absence of punishment or a deterioration in working conditions resulting from his complaint, Mr. Baker has not presented a plausible theory of retaliation, as opposed to a continuation of a hostile work environment. Therefore, I grant Gladstone Auto's Motion for Summary Judgment [34] on Mr. Baker's retaliation claims (Claims Three and Four).

B. Hostile Work Environment

Gladstone Auto objected to Judge Russo's finding that there is a disputed issue of material fact regarding whether race-based comments were pervasive enough to create a hostile work environment. *See* Objs. [50] at 9–11; F&R [48] at 16. Judge Russo found "a reasonable jury could conclude that plaintiff was subjected to or witnessed race-based comments on at least a monthly basis." F&R [48] at 16. This finding was based on the specific comments that Mr. Baker could recall at his deposition and his assertion that Mr. Stiefel made similar comments "all the time." *Id.* Gladstone Auto argues that I should ignore Mr. Baker's assertion that he heard race-based comments all the time because Mr. Baker made that allegation for the first time in his declaration opposing Gladstone Auto's Motion for Summary Judgment. Objs. [50] at 10.

If Gladstone Auto was correct in its assertion that Mr. Baker's allegation was only made after the deposition, I would agree that the question of pervasiveness should be resolved only by reference to the specific comments Mr. Baker could recall at his deposition. And I would also

5 – OPINION AND ORDER

agree that these comments are insufficient to establish the requisite pervasiveness for a hostile work environment claim. It is not the case, however, that Mr. Baker made this allegation only after his deposition. During the deposition, Mr. Baker stated that Mr. Stiefel would comment that Hispanic customers had "brought the whole tribe again . . . more than once" and that "[i]t happened all the time . . . these instances and remarks." Elkanich Decl. [35] Ex. 3 at 70–71. Therefore, I agree with Judge Russo's finding that a reasonable jury could conclude that race-based comments were pervasive enough to create a hostile work environment.

C. Disparate Treatment

Judge Russo found that Mr. Baker had established the elements of a disparate treatment claim under the *McDonnell Douglas* framework and that summary judgment was inappropriate because Gladstone Auto had not provided a "legitimate, nondiscriminatory reason for the alleged discriminatory action." F&R [48] at 18–19 (citing *Richardson v. Nw. Christian Univ.*, 242 F. Supp. 3d 1132, 1148 (D. Or. 2017)). I disagree with Judge Russo's finding that Mr. Baker made a prima facie showing of disparate treatment. Assuming that Mr. Baker "experienced an adverse employment action," he must also show that "'other circumstances surrounding the adverse employment action give rise to an inference of discrimination' or 'similarly situated individuals outside his protected class were treated more favorably.'" F&R [48] at 17 (quoting *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 847 (9th Cir. 2004)).

First, I find that Mr. Baker did not raise an issue of material fact regarding whether Mr. Elder's lenient discipline of Mr. Stiefel gives rise to an inference of discrimination. There is no plausible allegation that Mr. Stiefel's comments can be attributed to Mr. Elder to show that he acted with a discriminatory intent. Second, Mr. Baker has also not shown that similarly situated individuals were treated more favorably. In this regard, I agree with Judge Russo that Mr. Baker

has not sufficiently supported his claim that he was treated less favorably than non-Hispanic employees because he received less credit for car deals. F&R [48] at 12. Nor can the disparate treatment claim rest on the assertion that Mr. Elder disbelieved Mr. Baker's complaint because he is Hispanic and believed Mr. Stiefel's denial because he is Caucasian. *See* Resp. [39] at 31. This is not an example of a similarly situated individual who was treated more favorably—that would require producing evidence of an employee who was not constructively discharged after reporting harassment. Furthermore, even if Mr. Baker had made a prima facie showing of disparate treatment, Gladstone Auto advanced a nondiscriminatory reason for the discipline Mr. Stiefel received. Mr. Baker stated that his constructive discharge resulted from Mr. Elder's lenient punishment of Mr. Stiefel. Resp. [42] at 30. But Gladstone Auto argued that it issued formal written discipline to Mr. Stiefel after it was unable to corroborate Mr. Baker's complaint. Objs. [50] at 4. I find this to be a legitimate, nondiscriminatory reason for the level of discipline Mr. Stiefel received. Therefore, I decline to adopt Judge Russo's finding on Mr. Baker's disparate treatment claim and grant summary judgment on the disparate treatment elements of Claims One and Two.

D. FMLA

Mr. Baker also brought claims under the FMLA and the Oregon Family Leave Act, alleging that Gladstone Auto had interfered with his right to take medical leave and retaliated against him for taking that leave. Compl. [1] at 9–11. Judge Russo found that the retaliation claims failed because there was "no indication defendant's treatment of plaintiff's race-based complaint was in any way related to [medical] leave." F&R [48] at 21. Based on three comments made in response to two separate events, Judge Russo found that Mr. Baker had,

7 – OPINION AND ORDER

however, raised a question of fact about whether Gladstone Auto had interfered with Mr. Baker's right to leave under the FMLA.

An employer is liable for interfering with an employee's rights under the FMLA if the employer "engag[es] in activity that tends to chill an employee's freedom to exercise his rights." *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1123 (9th Cir. 2001) (quoting *Cal. Acrylic Indus. Inc. v. NLRB*, 150 F.3d 1095, 1099 (9th Cir.1998)). The chilling activity addressed in *Bachelder* was an employer's decision to consider an employee's FMLA leave as a "negative factor" in deciding whether to fire the employee. 259 F.3d at 1125. The Department of Labor (DOL) regulation instituting the FMLA's prohibition on interference states that "discouraging an employee from using [FMLA] leave" is actionable as interference with the exercise of rights under the FMLA. 29 C.F.R. § 825.220(b). The regulation also states that employees are prohibited from "discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights." 29 C.F.R. § 825.220(c). As an example of discouragement, the Ninth Circuit stated that "an employer has discouraged an employee from taking FMLA leave when his or her supervisor interferes with the length and dates of leave, including denying leave outright." *Liu v. Amway Corp.*, 347 F.3d 1125, 1134.

Although he was permitted to take the leave he requested, Mr. Baker alleged that Gladstone Auto interfered with his FMLA rights on two occasions. First, when he asked for leave in June 2016 after being hospitalized due to a motorcycle accident, Mr. Baker alleges that Mr. Elder told him, "I've been hurt worse," and Mr. Stiefel said that Mr. Baker was needed at work. Liss Decl. [41] Ex. 1 at 127–28. More than a year later, in September 2017, Mr. Baker sent a text message to Mr. Stiefel, stating that he "threw [his] back out completely" and would need to stay at home to rest it. Liss Decl. [41] Ex. 11 at 1. Mr. Stiefel allegedly responded by

saying, "Wow that doesn't work for me[.]" Citing these two incidents, Judge Russo found a question of fact regarding whether Gladstone Auto had interfered with Mr. Baker's right to take FMLA-qualifying leave. F&R [48] at 20. I disagree.

First, Mr. Baker made no showing that the September 2017 request to stay at home to rest his back qualified for FMLA leave. FMLA leave is authorized for "an illness, injury, impairment or physical or mental condition that involves inpatient care . . . or continuing treatment by a health care provider." 29 C.F.R. § 825.113. Mr. Baker's request to stay at home was not a request for leave due to inpatient care, nor was it a request for leave in order to receive "continuing treatment by a health care provider." And there was no indication from Mr. Baker's text message that his back problem was related to the motorcycle accident, which did qualify for FMLA leave. If the back injury was connected to the motorcycle accident, Mr. Baker was required to "specifically reference the qualifying reason for leave or the need for FMLA leave." 29 C.F.R. § 825.302(c). Because Mr. Baker did not make a request for leave that is protected by the FMLA, I find that Mr. Stiefel's response did not interfere with Mr. Baker's right to take FMLA-qualifying leave.

I agree with Judge Russo's finding that whether Mr. Baker was permitted to take the leave he requested is not dispositive of whether Gladstone Auto interfered with his FMLA rights. F&R [48] at 20 n.5. However, I do not find that Mr. Elder's and Mr. Stiefel's June 2016 comments constitute interference with Mr. Baker's rights under the FMLA. Although they were disappointed by Mr. Baker's request, the comments by Mr. Elder and Mr. Stiefel are not "discouragement" as implied by the DOL regulation or as defined by Ninth Circuit caselaw. 29 C.F.R. § 825.220(b) explains that, in addition to refusing to authorize FMLA leave, discouraging an employee from requesting FMLA leave is actionable as interference. The regulation then

states that employers may not discriminate or retaliate against an employee for exercising rights under the FMLA. 29 C.F.R. § 825.220(b), (c). Reading the actions proscribed by the DOL regulation together, I find that Mr. Elder's and Mr. Stiefel's comments are not equivalent to the behavior that is prohibited. Nor has Mr. Baker produced caselaw to the contrary. *Bachelder* and *Liu* are cases in which the Ninth Circuit found an employer had interfered with an employee's FMLA rights by taking an affirmative step to discourage an employee's exercise of rights under the FMLA. In *Bachelder*, the employer used FMLA leave as a negative factor in an employment decision and in *Liu* the employer manipulated the length and dates of an employee's leave. In contrast, Mr. Elder's and Mr. Stiefel's comments contained no threat of negative consequences for Mr. Baker's request.[1] Accepting Mr. Baker's argument that those comments are actionable as interference with FMLA rights would mean that an employer could only escape liability by enthusiastically supporting an employee's leave request. Behavior actionable as discouragement of an employee's exercise of FMLA rights cannot be defined so broadly.

## CONCLUSION

For the reasons described above, I ADOPT the F&R [48] in part. Defendant's Motion for Summary Judgment [34] is GRANTED in part and DENIED in part. Claims Three through Ten in Plaintiff's Complaint [1] are dismissed with prejudice. Additionally, the disparate treatment elements of Claims One and Two are dismissed with prejudice.

IT IS SO ORDERED.

DATED this 19 day of July, 2019.

MICHAEL W. MOSMAN
Chief United States District Judge

---

[1] And while not controlling, it is highly relevant to the inquiry that Mr. Baker was actually granted all the leave he requested with no identified adverse consequences.

10 – OPINION AND ORDER